# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **PHILADELPHIA INDEMNITY** | § | |
| **INSURANCE CO.,** | § | |
| | § | |
| **Plaintiff-Counterdefendant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:07-CV-1469-O** |
| | § | |
| **HALLMARK CLAIMS SERVICE, INC.,** | § | |
| | § | |
| **Defendant-Counterclaimant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment, filed May 9, 2008 (Docket # 37); Defendant's Motion for Partial Summary Judgment, filed May 29, 2008 (Docket # 42); Plaintiff Philadelphia Indemnity Insurance Company's Motion to Strike Defendant's Second Amended Answer and Counterclaim, filed June 11, 2008 (Docket # 46); and Defendant's Motion for Leave to Amend, filed June 27, 2008 (Docket # 51). Having carefully considered the pleadings, evidence and applicable law, the court **denies** Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment; **denies as moot** Defendant's Motion for Partial Summary Judgment; **grants** Plaintiff Philadelphia Indemnity Insurance Company's Motion to Strike Defendant's Second Amended Answer and Counterclaim; and **denies** Defendant's Motion for Leave to Amend.

## I.    Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment

### A.    Background

In this insurance coverage declaratory judgment action, Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") seeks summary judgment declaring that it is not obligated to defend and/or indemnify one of its insureds, Defendant Hallmark Claim Services, Inc. ("HCS"), in connection with claims asserted in a separate lawsuit against HCS by Phoenix Indemnity Insurance Company ("Phoenix Indemnity").  HCS has filed a cross-motion for partial summary judgment, seeking a declaration that PIIC has a duty to defend and indemnify it.  Except where otherwise noted, the following facts are uncontroverted for purposes of this motion.

#### 1.    The Underlying Lawsuit

On May 7, 2004, Phoenix Indemnity sued multiple defendants alleging professional negligence arising from those defendants' legal services rendered in relation to the defense of a lawsuit involving a Phoenix Indemnity insured driver, Elizabeth Macias, who was involved in an automobile accident.  Pl. MSJ App. at 36-38.  That lawsuit, *Phoenix Indemnity Insurance Company v. Herzon and O'Connor, et al.*, Case No. CV 2004-008961, is pending in Maricopa County Superior Court in Arizona (the "Arizona Action"). On October 14, 2004, Phoenix Indemnity amended its complaint to add HCS as a defendant, alleging that it retained HCS in October 2002 to manage and handle the administration of claims pertaining to Macias's insurance policy and a lawsuit brought against Macias by two other drivers involved in the accident, Elizabeth Adkins and Marie Adkins (the "Adkins Action").  In the amended complaint, Phoenix Indemnity alleges that HCS breached its duty as a claims handler to "perform its obligations with respect to the management and handling of the claim on the Macias policy and

the Adkins Action with the degree of skill, care and expertise customary for claims litigation administrators who handle claims in similar situations." *Id.* at 41.

## 2. The Policy

PIIC insured HCS under Professional Liability Insurance Policy No. PHSD041249 (the "Policy") for the period of November 20, 2002 through November 20, 2003. *Id.* at 5. On September 29, 2003, HCS notified PIIC of the claims that Phoenix Indemnity ultimately asserted against HCS in the Arizona Action. Def. MSJ App. at 13-18. After being added as a defendant on October 12, 2004, HCS tendered defense of the Arizona Action to PIIC, requesting defense and indemnification under the Policy. PIIC is currently providing HCS a defense in the Arizona Action under a reservation of its rights. Pl. MSJ App. at 30-35.

The Policy provides professional liability coverage for claims related to HCS's insurance claims services first made against HCS and reported to PIIC during the policy period. *Id.* The Policy language relevant to the scope of coverage is as follows:

I.      [PIIC] shall pay on behalf of the "Insured" all sums, not exceeding the Limits of Liability and in excess of the applicable Deductible set forth in the Declarations, for which the "Insured" shall become legally obligated to pay as "Damages" resulting from any "Claim" first made against the "Insured" and reported to the Company by written notice during the "Policy Period"; PROVIDED ALWAYS THAT such "Claim" is by reason of a "Wrongful Act" committed [during the "Policy Period" or prior thereto and subsequent to a retroactive date specified in the Policy].

*Id* at 12. Section V ("Exclusions") of the Policy, at Exclusion O, provides:

V.      THIS POLICY DOES NOT APPLY TO ANY CLAIM AND "CLAIM EXPENSES" ARISING OUT OF:

O.      any "Professional Services" performed for any entity in which any "Insured" is a principal, partner, officer, director or a more than three percent (3%) shareholder.

*Id.* at 15.  With regard to Exclusion O, the Policy defines "Insured" as:

> IV.    DEFINITIONS
>
>> E.    Insured means:
>>
>>> 1.    The individual, partnership, corporation or other entity named in Item 1 of the Declarations and shall include any partner, director, officer or employee thereof while acting within the scope of their duties as such.
>>> 2.    Any former or retired partner, director, officer or employee of the Named Insured or of any Predecessor Firm but only for those Professional Services rendered on behalf of the Named Insured prior to the date of separation or retirement from such entity(ies).
>>> 3.    Any independent contractor associated exclusively with the Named Insured while acting solely on the Named Insured's behalf.
>>> 4.    The heirs, executors, administrators, assignees, and legal representatives of each Insured in the event of such Insured's death, incapacity or bankruptcy as respects the liability of each Insured as is otherwise covered herein.

*Id.* at 13-14.  "Professional Services" is defined as follows:

> J.    Professional Services means services rendered to others for a fee solely in the conduct of the "Insured's" profession as stated in Item 8 of the Declaration.

*Id.* at 14.  Item 8 of the Declaration identifies HCS's profession as "Insurance Claim Services."

*Id.* at. 5.

In October 2002, Bob Campbell, an HCS claims handler, began handling the personal injury litigation involving the Macias policy that ultimately resulted in the Arizona Action.  Def.

Response App. at 13-26.[1]  It is undisputed that HCS and Phoenix Indemnity had no overlapping officers and directors in 2002.  On or about January 1, 2003, however, Phoenix Indemnity became a wholly owned subsidiary of HCS's parent company, Hallmark Financial Services, Inc. ("Hallmark").  *Id.* at 39-40.  As a result of Hallmark's acquisition, beginning on January 1, 2003, and continuing thereafter, HCS and Phoenix Indemnity shared numerous corporate officers and directors.  *Id.* at 93, 99, 115, 121-23, 125-28, 133-46; Pl. MSJ App. at 72-82.

**B.    Legal Standard**

**1.    Choice of Law**

PIIC originally filed this declaratory judgment action in the United States District Court for the District of Arizona.  Following HCS's successful motion to transfer venue, this action was transferred to the Northern District of Texas on August 8, 2007.  As this action was originally filed in Arizona, Arizona choice of law rules apply.  *See Ferens v. John Deere Company*, 494 U.S. 516, 523 (1990) ("A transfer under § 1404(a) . . . does not change the law applicable in a diversity case.").  Under Arizona's choice of law analysis, the law of the state with the "most significant relationship" to the issue before the court will apply.  *See Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 77 P.3d 439 (Ariz. 2003) (and cases cited therein).  HCS argues that Texas law applies as Texas has the "most significant relationship" to this case.  PIIC states that the court may apply Texas or Arizona law since "the same result . . . obtains under the laws of both states." Pl. MSJ Brief at 9.  Accordingly, as both parties have agreed to application of Texas law, the court will apply Texas law in analyzing this insurance coverage dispute.

---

[1] HCS filed an Appendix in Support of Defendant's Response to Philadelphia Indemnity Insurance Company's Motion for Summary Judgment.  The court refers to this appendix as "Def. Resp. App.," as contrasted to earlier citations to the appendix HCS filed in support of its own Motion for Partial Summary Judgment, which the court refers to as "Def. MSJ App."

### 2.       Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). Both parties urge, and the court agrees that, as to the duty to defend and/or indemnify under the Policy, the case presents no genuine issues of material fact, and the case should be decided as a matter of law.

### 3.       The Duty to Defend and Indemnify

This case involves both an alleged duty to defend HCS in the Arizona Action and an alleged duty to indemnify it for liability arising from the lawsuit. The duties to defend and indemnify are separate and distinct. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001). An insurer's duty to defend is much broader than the duty to indemnify. *Id.* If the court finds that the insurer has no duty to defend, then there is no duty to indemnify. *See id.* (citation omitted)

Generally, an insurance policy is interpreted based on the same rules of construction applicable to contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Under Texas law, a district court determines an insurer's duty to defend by following the eight-corners rule. *Liberty Mutual Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006). Based on this rule, the court looks at only the allegations in the underlying petition and the language of the insurance policy to determine whether a duty to defend exists. *Id.* Texas courts have applied the

eight-corners rule strictly and, except for limited exceptions, do not allow consideration of extrinsic evidence to determine the duty to defend. *See Liberty Mutual Ins. Co.*, 473 F.3d at 601 (court can look at extrinsic evidence when it goes solely to a fundamental issue of coverage and does not engage the truth or falsity of facts alleged in underlying petition); *see also GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

If the petition filed against the insured, liberally construed, alleges facts within the scope of coverage, the insurer has a duty defend. *Liberty Mutual Ins. Co.*, 473 F.3d at 602 n. 19 (and cases cited therein). Doubts are resolved in favor of the insured. *Id.* Further, a district court must "review the allegations made in the court petitions . . . in light of the exclusions in the insurance contracts[.]" *Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.*, 2 F.3d 105, 107 (5th Cir. 1993). "If the petition only alleges facts excluded by the policy, the insurer is not required to defend." *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982) (citations omitted). As a general matter, "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded[.]" *Northfield Insur. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 537 (5th Cir. 2004).

Under the eight-corners rule, the initial burden lies with the insured to demonstrate that the claims alleged in the underlying lawsuit potentially fall within the insurance policy's scope of coverage. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). If the insured carries its burden, the insurer may argue the applicability of an exclusion to coverage under the policy, also under the eight corners rule. *See E. & R. Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746, 749 (N.D. Tex. 2001); *Northfield Insur. Co.*, 363 F.3d at 528.

Insurance policies are contracts governed by the principles of interpretation applicable to contracts, and state law rules of construction govern in diversity cases such as this one. *Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1095 (5th Cir.1995). The determination whether a contract term is ambiguous is a matter of law. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union,* 957 F.2d 196, 199 (5th Cir.1992). A term is ambiguous only if it is susceptible to more than one reasonable meaning, and mere disagreement between the parties about the correct interpretation of the term will neither render it ambiguous nor transform the issue of law into one of fact. *Id.* The court will not strain to find an ambiguity where none exists. *Ramsay v. Md. Am. Gen. Ins. Co.,* 533 S.W.2d 344, 346 (Tex.1976). If the contract is subject to a "certain or definite legal meaning or interpretation," it is not ambiguous, and the court will construe its meaning as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

Unlike other contracts where ambiguous language creates a fact question, insurance policies are analyzed with a presumption in favor of coverage. *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 701 (Tex.1993). When a policy term is ambiguous, the court will construe the term in favor of the insured. *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483, 486 (5th Cir.1996) (quoting *Adams v. John Hancock Mut. Life Ins. Co.,* 797 F.Supp. 563, 567 (W.D.Tex.1992)). When construing a policy term that excludes or limits coverage, a court must adopt any reasonable interpretation of the exclusion urged by the insured, even if the interpretation provided by the insurer appears more reasonable or a more accurate reflection of the parties' intent. *Id.* These rules of construction only apply, however, when the terms of the policy are ambiguous. *Ranger Ins. Co. v. Bowie,* 574 S.W.2d 540, 542 (Tex.1978).

## C.    Analysis

PIIC has moved for summary judgment against HCS on the sole basis that Exclusion O precludes coverage since, *at the time HCS made it claim for coverage in 2003*, HCS and Phoenix Indemnity had numerous overlapping officers and directors. Pl. MSJ Brief at 15.[2]  According to PIIC, it is irrelevant that HCS rendered the professional services giving rise to the Arizona Action beginning in October 2002, prior to any overlap.[3]  By contrast, HCS contends that Exclusion O does not bar coverage since (1) applying the eight corners rule to the complaint in the Arizona Action and the Policy, without the addition of any extrinsic evidence, there is no basis to apply Exclusion O and bar coverage since neither the complaint in the Arizona Action nor the Policy gives any indication as to whether Phoenix Indemnity and HCS are related entities; and (2) were the court to consider extrinsic evidence under the limited circumstances allowed by the court, the undisputed evidence reveals that *at the time professional services were rendered in 2002*, HCS and Phoenix Indemnity shared no officers or directors.  Thus, HCS contends that under either scenario PIIC is not entitled to summary judgment.  After a brief review of Exclusion O, the court will address the parties arguments.

As stated above, Section V ("Exclusions") of the Policy, at Exclusion O, provides:

V.    THIS POLICY DOES NOT APPLY TO ANY CLAIM AND "CLAIM EXPENSES" ARISING OUT OF:

---

[2]In addition to a declaration that, as a matter of law, the Policy provides no coverage for any of HCS's claims, PIIC contends that it "is entitled to recoup any and all costs paid by PIIC on HCS's behalf in defending these claims, and that [it] is entitled to all costs and fees incurred in seeking declaratory judgment." Pl. MSJ Brief at 10.

[3]PIIC does not dispute that HCS provided proper notice of the claim to PIIC.  PIIC also does not dispute that, absent application of Exclusion O, HCS has met its initial burden of demonstrating that the claims alleged in the Arizona Action potentially fall within the Policy's scope of coverage. *See Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141.

O.      any "Professional Services" performed for any entity in which any "Insured" is a principal, partner, officer, director or a more than three percent (3%) shareholder.

P. MSJ App. at 15.

In support of its argument that Exclusion O bars coverage, PIIC contends that "by wording the exclusion in the present tense, PIIC manifested its clear and unambiguous intent that the exclusion must be applied at the time the claim was made, not at the time any underlying wrongful act might have occurred."  Pl. Reply Brief. in Support of Pl. MSJ at 8.  PIIC points to the undisputed evidence that "the Claim arises out of Professional Services performed for Phoenix Indemnity Insurance Company, in which several 'Insureds,' as defined by the Policy, were actively serving as officers and/or directors of related entities (HCS and Phoenix) at the time HCS's claim was submitted to PIIC."  *Id.* at 1. Further, PIIC contends that since the Policy is a "claims-made," and  not an "occurrence" policy, it follows that "the rights of HSC under the Policy at issue in this lawsuit vested at the time HCS submitted its claim to PIIC, <u>not</u> at the time of any injury alleged in relation to the [Arizona Action].  It follows that all exclusions and limitations on coverage also apply at the time the claim is made, not at the time of an alleged injury."  *Id.* at 3 (original emphasis).  While PIIC concedes that "there is no case law specifically interpreting the application and interpretation of this particular 'related entity' exclusion," PIIC argues that "it is quite clear that the intent of the language is to bar coverage for any claim relating to services performed for an entity that is related to the Insured *at the time the claim is made and reported*."  Pl. MSJ Brief at 11 (original emphasis).  Finally, PIIC cites cases considering the application of the so-called "insured versus insured" exclusion, which PIIC contends is "directly analogous to the 'related entity' exclusion at issue in this lawsuit."  Pl.

Reply Brief in Support of Pl. MSJ at 4 (citing *Township of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115 (3d Cir. 1997) (for purposes of the insured versus insured exclusion, "the relevant time period for determining the status of the insured . . . should be when the claim is made.")).

In response to PIIC's motion for summary judgment, HCS argues that the express language of the exclusion "mandates that whether or not HCS and Phoenix are related entities must be determined *as of the date the services were performed* that are the subject of the underlying lawsuit." Def. Reply Brief in Support of Def. MPSJ at 1-2 (original emphasis). Alternatively, HCS argues that "even if PIIC's belated and contrived argument could somehow be credited as reasonable, HCS is still entitled to summary judgment under applicable rules of construction so long as HCS's own interpretation of the exclusion is also reasonable, which it manifestly is." *Id.* at 2. HCS urges the court to ignore as irrelevant the cases which PIIC cites involving the "insured versus insured" exclusion. *Id.* at 3-4. HCS points out that Exclusion O does "not refer to a claim which is made by one insured against another insured but, rather, to any claim arising out of '*professional services performed*' for a related entity." *Id.* at 4 (original emphasis). Finally, HCS argues that "PIIC's multi-page blackletter treatise on the distinction between a 'claims-made' policy and an 'occurrence' policy is unhelpful and unnecessary. One may have, as we do here, a claims-made policy which incorporates within itself exclusions having nothing whatsoever to do with the date the claim is made or when the insured's rights 'vest' under the insurance contract." *Id.* at 7.

The language of Exclusion O is the starting point for the court's analysis:

V.    THIS POLICY DOES NOT APPLY TO ANY CLAIM AND "CLAIM EXPENSES" ARISING OUT OF:

O.      any "Professional Services" performed for any entity in which any "Insured" is a principal, partner, officer, director or a more than three percent (3%) shareholder.

Pl. MSJ App. at 15.  First, the court rejects PIIC's argument that  "by wording the exclusion in the present tense, PIIC manifested its clear and unambiguous intent that the exclusion must be applied at the time the claim was made, not at the time any underlying wrongful act might have occurred."  *See* Pl. Reply Brief. in Support of Pl. MSJ at 8. While PIIC is correct that Exclusion O contains the present tense verb, "is," PIIC ignores the words immediately preceding "is," namely, "professional services performed," which indicate an intent that the exclusion should be applied at the time the services were rendered (beginning in October 2002), rather than at the time HCS's claims were made (2003).  PIIC also ignores the term "ARISING OUT OF," which means "originating from [,] having its origin in," "growing out of," or "flowing from," or "incident to, or having connection with."  *See Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 391 (5th Cir. 2002) (internal citation omitted).  All exclusions to coverage in the Policy are preceded by the terms "ARISING OUT OF," lending further support to HCS's argument that whether HCS and Phoenix Indemnity are related entities must be determined as of the date the services were performed that are the subject of the underlying lawsuit, not at the time the claim was made.

Further, PIIC's reliance on cases from other jurisdictions interpreting the "insured versus insured" policy exclusions is misplaced.  PIIC provides no support for the assertion that Exclusion O should be interpreted in a similar manner to an "insured versus insured" policy exclusion.  Indeed, as HCS points out, the Policy already contains a

separate "insured versus insured" exclusion, which provides that the Policy does not apply to a claim arising out of "[a]ny Claim brought by any Insured against another Insured." Def. MPSJ App. at 8:

> Unmistakably, the two exclusions have nothing in common with respect to their temporal underpinnings. There is no question at all that the "insured versus insured" endorsement must be measured, by its explicit terms, at the time a "Claim" is "brought." Exclusion O, by contrast, unambiguously refers, *in the past tense*, to the date professional services are "performed."

Def. Reply Brief in Support of Def. MPSJ at 3 (original emphasis).

While PIIC is correct that "there is no case law specifically interpreting the application and interpretation of this particular 'related entity' exclusion," Pl. MSJ Brief at 11, the court has located one unreported case involving nearly identical language. In *Ames v. Uranus, Inc.*, 1994 WL 171730 (D. Kan. Apr. 29, 2994), the court considered whether a similar exclusion barred coverage under an accountants' professional liability policy. The exclusion in that case stated that the insuring agreement did not apply to:

> any claim arising out of professional accounting services performed for any organization, corporation, company, partnership or operation (other than the Named Insured) while any Insured or any Insured's spouse is an officer, trustee, director, partner, manager or a more than 5% shareholder.

1994 WL 171730, at *3. The court determined that the language of the exclusion was "unambiguous and bar[red] coverage of any claim arising out of professional accounting services performed for any corporation while [the insured] is an officer, trustee, director, partner, manager or a more than 5% shareholder." *Id.* at *8. In interpreting the exclusionary language, the court looked to whether the insured was an officer, trustee,

director, partner or more than five percent shareholder of the corporation for whom the services were performed, at the time the professional accounting services were performed, not at the time the claim was made. *See id.*

Also helpful, though not identical, is the exclusionary language at play in the *Coregis* case, cited by HCS. *See* Def. Reply Brief in Support of Def. MPSJ at 6 (citing *Coregis Ins. Co. v. Bartos, Broughal & DeVito, LLP*, 37 F.Supp.2d 391 (E.D.Pa. 1999)). The *Coregis* policy excluded "any claim arising out of professional services rendered or that should have been rendered to or on behalf of an entity which, at that time, was 5% or more owned, controlled, managed, or operated by any insured or combination of insureds." The court looked to whether the attorney insured in the case had the requisite relationship with the business entities at the time his alleged conduct occurred to determine if the exclusion applied.

While the language of the related entity exclusions in *Ames* and *Coregis* is not identical to that in Exclusion O, the court finds the related entity exclusion in these cases more analogous to the exclusion at hand, than the inapposite cases upon which PIIC exclusively relies. Both cases measured whether the insured had the relationship with the business entity at the time the conduct occurred, not at the time the claim was made, further buttressing HCS's interpretation of Exclusion O. Though the court is not prepared to accept HCS's argument that Exclusion O unambiguously mandates that whether or not HCS and Phoenix are related entities must be determined as of the date the services were performed that are the subject of the underlying lawsuit, at a minimum, the court concludes that the use of past and present tense verbs, coupled with the

14

governing phrase "ARISING OUT OF," creates an ambiguity as to whether the exclusion applies at the time the claim was made or at the time any underlying wrongful act might have occurred.

In sum, based on the plain language of Exclusion O, the cases cited above, and applicable Texas law governing the interpretation of contracts, the court determines that the language of Exclusion O is susceptible to more than one reasonable meaning, and is therefore ambiguous. *See D.E.W., Inc.*, 957 F.2d at 199. Otherwise stated, Exclusion O is not subject to a "certain or definite legal meaning or interpretation[.]" *See Coker*, 650 S.W.2d at 701. Under Texas law, unlike other contracts where ambiguous language creates a fact question, insurance policies are analyzed with a presumption in favor of coverage. *See State Farm Fire & Cas. Co.*, 873 S.W.2d at 701. When a policy term is ambiguous, the court will construe the term in favor of the insured. *See Toops*, 72 F.3d at 486. Moreover, as set forth above, when construing a policy term that excludes or limits coverage, a court must adopt any reasonable interpretation of the exclusion urged by the insured, even if the interpretation provided by the insurer appears more reasonable or a more accurate reflection of the parties' intent. *Id.* The court concludes that HCS's interpretation of Exclusion O is more than reasonable, and therefore adopts HCS's interpretation and looks to the time professional services were rendered to determine if HCS and Phoenix Indemnity had overlapping officers and directors. It is undisputed that beginning in October 2002, Bob Campbell, an HCS claims handler, was involved in handling the personal injury litigation that resulted in the Arizona Action. Def. Response App. at 13-26. PIIC has provided the court with no evidence of overlapping officers and

directors in 2002. The undisputed facts show that only beginning on January 1, 2003 did HCS and Phoenix Indemnity shared numerous corporate officers and directors. *See* Def. Resp. App. at 93, 99, 115, 121-23, 125-28, 133-46; Pl. MSJ App. at 72-82. Accordingly, Exclusion O does not bar coverage.

In short, PIIC has failed to raise a genuine issue of material fact that any Policy provision precludes coverage of HCS's claims stemming from the Arizona Action. Accordingly, the court **denies** PIIC's motion for summary judgment.[4] As PIIC has not disputed that, absent Exclusion O, HCS's claims fall within the general coverage provisions, the court determines that PIIC has a duty to defend HCS with regard Phoenix Indemnity's claims against it in the Arizona Action.[5]

## II. Defendant's Motion for Partial Summary Judgment

HCS has filed a cross-motion for summary judgment seeking a declaratory judgment that PIIC has a duty to defend and/or indemnify it under the Policy. As the issue of PIIC's duty to defend and/or indemnify HCS under the Policy has already been placed at issue by the parties in resolving PIIC's motion for summary judgment, the court **denies as moot** Defendant's Motion for Partial Summary Judgment. *See generally Landscape Design and Const., Inc. v. Transport Leasing Contract*, 2002 WL 257573, at

---

[4]Alternatively, PIIC's motion for summary judgment should be denied since, "within the confines of the eight corners rule," and absent consideration of any extrinsic evidence, PIIC has failed to meet its burden "of showing that the plain language of the policy exclusion or limitation allows [it] to avoid coverage." *See Northfield Insur. Co.*, 363 F.3d at 528; *see also* Def. Brief in Supp. of Def. MPSJ at 13 ("There is no indication in the [complaint filed in the Arizona Action], however, that would answer the question of whether Phoenix [Indemnity] and HCS are related entities and thus, under a strict application of the eight corners rule, PIIC unquestionably owes HCS a duty to defend.").

[5]Because the court has determined that Exclusion O does not bar coverage under the undisputed facts, the court need not consider HCS's alternate argument in response to PIIC's motion, namely, that PIIC waived the right to assert Exclusion O as a defense because "PIIC defended HCS for more than six months without a reservation of rights[.]" *See* Def. Reply Brief in Support of Def. MPSJ at 8.

*10 (N.D. Tex. Feb. 19, 2002) (and cases cited therein) (dismissing declaratory judgment suit where matters in ongoing lawsuit before court sought resolution of same matters involving "construction of the terms" of a "written instrument").[6]

### III.  Plaintiff Philadelphia Indemnity Insurance Company's Motion to Strike Defendant's Second Amended Answer and Counterclaim and Defendant's Motion for Leave to Amend

On June 11, 2008, PIIC filed its Motion to Strike Defendant's Second Amended Answer and Counterclaim, asking the court to strike an amended pleading which HCS had filed without seeking leave of court on May 29, 2008.  On June 27, 2008, HCS filed a document titled, "Defendant's (1) Response to Plaintiff's Motion to Strike Second Amended Answer and Counterclaim; and (2) Motion for Leave to Amend" ("Def. Resp. to Pl. Mot. to Strike").  The motions have been fully briefed.  As the facts and law relating to their resolution is essentially the same, the court will consider the motions together.

---

[6]Both parties implicitly acknowledge that a declaratory judgment is a proper manner in which to resolve disputes over liability insurance coverage. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941). In the context of moving to strike HCS's proposed amended pleading, *see infra* at Sec. III, PIIC argues that allowing HCS to amend its counterclaim a second time to add a request for declaratory relief would be "futile," since "the Court already has been asked to determine the parties' rights and duties under the Policy by virtue of PIIC's own request for declaratory judgment." *See* Pl. Reply Brief in Support of Mot. to Strike at 10 (Doc. # 54).  According to PIIC, "HCS's counterclaim for declaratory judgment must be dismissed because it is entirely duplicative of pending issues that already are before the court.  Indeed, in both its Complaint and its pending Motion for Summary Judgment, PIIC already has asked the Court to resolve the identical issues as those raised in HCS' one-paragraph declaratory judgment counterclaim."  Pl. Mot. to Strike at 8.  Based on these statements, PIIC is judicially estopped from later contending that HCS needed to seek declaratory relief pertaining to the scope of coverage under the Policy, or that its own request for declaratory judgment did not encompass the entirety of the parties' rights and duties pertaining to coverage under the Policy.  *See generally In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000)  (citation and internal punctuation omitted) ("Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.").

**A.        Legal Standard**

Under Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleadings once as a

matter of course . . . (A) before being served with a responsive pleading, or (B) within 20

days after serving the pleading if a responsive pleading is not allowed and the action is

not yet on the trial calendar."   In all other cases, "a party may amend the party's pleading

*only by leave of court or by written consent of the adverse party*; and leave shall be freely

given when justice so requires."   Rule 15(a)(2) (emphasis added).

**B.        Analysis**

**1.        Relevant Procedural History**

PIIC initially filed this declaratory judgment action to resolve a coverage dispute

involving the Policy in the United States District Court for the District of Arizona on

November 3, 2006.   HCS filed its Answer to Complaint on December 13, 2006, and

Amended Answer to Complaint with Jury Demand and Counterclaim against

Philadelphia Indemnity Insurance Company on January 3, 2007, alleging by way of

counterclaim that PIIC acted in bad faith in connection with HCS's claim.   On January 6,

2007, PIIC filed a Reply to HCS's Counterclaim.   On August 9, 2007, the district court in

the District of Arizona transferred the case to the Northern District of Texas where it was

docketed on August 28, 2007 and assigned to Judge Sydney A. Fitzwater.   Judge

Fitzwater reassigned the case to this court on December 3, 2007.   On September 25,

2007, HCS's counsel filed his notice of appearance.

The court entered a Scheduling Order on April 1, 2008, pursuant to which, among

other things, "all motions requesting **joinder** of additional parties or **amendments** of

18

pleadings shall be filed" by May 30, 2008. Sch. Ord. at 2. (original emphasis). On May 9, 2008, PIIC filed its motion for summary judgment seeking a declaration that it has no duty to defend and/or indemnify HCS in relation to the Arizona Action. On May 29, 2008, the deadline for responding to PIIC's motion for summary judgment, and one day before the deadline to file motions seeking leave to amend pleadings, HCS filed a Second Amended Answer and Counterclaim without seeking leave of court and without the consent of PIIC. *See* Docket No. 45. In addition to its counterclaim alleging bad faith, HCS's proposed second amended counterclaim contained a request for declaratory relief pertaining to coverage under the Policy, as well as allegations that PIIC engaged in unfair claims settlement practices in violation of Texas law. On the same date, HCS also filed its response to PIIC's summary judgment motion, as well as its own motion for partial summary judgment, seeking a declaration that PIIC has an obligation to defend and indemnify it with regard to the Arizona Action. On June 11, 2008, PIIC filed a motion to strike the proposed amended pleading. On June 27, HCS filed a document containing both a response to the motion to strike and a motion for leave to amend. This case is set for trial on the court's four-week docket beginning February 2, 2009.

### 2. PIIC's Motion to Strike

PIIC has moved to strike HCS's Second Amended Answer and Counterclaim, since "HCS sought neither leave of Court nor written consent of PIIC prior to filing" its proposed pleading, in derogation of both Fed. R. Civ. P. 15 and this court's April 1, 2008 Scheduling Order. *See* Pl. Reply to HSC's Resp. to Mot. to Strike at 3.

19

In response to PIIC's motion to strike, HCS argues that under the court's April 1, 2008 Scheduling Order, it is not required to seek leave of court prior to filing its Second Amended Answer and Counterclaim. Def. Resp. to Pl. Mot. to Strike at 2. In support of its position, HCS argues:

> This Court's April 1, 2008 Scheduling Order, however, expressly permitted the amendment, and leave of Court was not required. Moreover, even if the Court were to go through the unnecessary exercise of examining PIIC's purported reasons why leave should not be granted – when no such leave was necessary – those reasons are manifestly manufactured, and do not override the general rule that leave of court should be freely granted.

Id. at 2. HCS then cites to page 1 of the April 1, 2008 Scheduling Order which provides in the "Summary of Critical Dates" that the "Deadline for Joinder of Parties or Amendment of Pleadings" is May 30, 2008. Id. (citing Sch. Ord. at 1). Since the word "motion" is not included in the summary, HCS assumes none was required. Further, HCS cites Section II(2) of the Scheduling Order, titled "Joinder of Parties or Amendment of Pleadings," wherein the court provides "all motions requesting joinder of additional parties or amendments of pleadings shall be filed" by May 30, 2008. Id. (citing Sch. Ord. at 2) (emphasis omitted). From this, HCS concludes that: "By using the word 'or,' and by stating on page 1 that the deadline referred to is for the 'Amendment of Pleadings,' the Scheduling Order clearly permits amendment of the pleadings by May 30, 2008, and does not require a party to file a motion for leave to amend." Def. Resp. to Pl. Mot. to Strike at 2-3.

The court rejects HCS's tortured interpretation of the plain language of the court's April 1, 2008 Scheduling Order. The court entered a Scheduling Order on April

1, 2008, pursuant to which, among other things, "all motions requesting **joinder** of additional parties or **amendments** of pleadings shall be filed" by May 30, 2008. Sch. Ord. at 2. (original emphasis). For HCS to argue that the court's use of the disjunctive "or" means that leave of court is only required for joinder of additional parties but not amendment of pleadings is, to be generous, nonsensical. The plain language of the Scheduling Order required HCS to seek leave of court prior to filing its Second Amended Answer and Counterclaim on May 29, 2008. *See generally Rushing v. Kansas City S. Railway Co.*, 185 F.3d 496, 508 (5th Cir. 1999) ("[A] party who ignores any case-management deadline does so at his own peril.").

Moreover, HCS inexplicably ignores the Federal Rules of Civil Procedure, whereby after a party has amended its pleadings once as a matter of course, "a party may amend the party's pleading *only by leave of court or by written consent of the adverse party*; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2) (emphasis added). As already set forth above, HCS filed an amended answer and counterclaim on January 3, 2007. On January 6, 2007, PIIC filed a Reply to HCS's Counterclaim. Accordingly, under Rule 15, HCS was required to seek leave of court or consent of PIIC prior to filing its Second Amended Counterclaim and Answer, neither of which HCS did. Other than reurge its untenable argument that it did not need to do either, HCS provides no other response to PIIC's Motion to Strike and no justification for failing to seek leave of court to amend its pleading prior to May 30, 2008. Rule 15's liberal pleading policy does not mean that a party may simply ignore pleading deadlines

set by the court. In light of the foregoing, the court **grants** PIIC's motion to strike and will direct the clerk to strike Docket Entry Number 45.

### 3. HCS's Motion for Leave to Amend

Although continuing to insist that leave was not required when it filed its Second Amended Counterclaim and Answer on May 29, 2008, on June 27, 2008, almost a month later, HCS filed a motion for leave to amend "[s]olely out of an abundance of caution." *Id.* at 3. In its motion, HCS asserted that: "the sole intent of [the proposed amended pleading] was to restate and elaborate upon its bad faith claim in accordance with Texas law, and to request its own declaratory judgment from the Court in connection with the coverage dispute. Nothing about this pleading prejudices, surprises or changes anything whatsoever with respect to PIIC's defense of this action." Def. Resp. to Pl. Mot. to Strike at 2.

Rule 16(b) of the Federal Rules of Civil Procedure governs amendment of the pleadings after a scheduling order deadline has expired. *S&W Enter., LLC v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003); FED. R. CIV. P. 16(b). The movant must first demonstrate good cause to modify the scheduling order before the more liberal standard of Rule 15(a) will apply to the court's decision to grant or deny leave to amend. *See Id.* In determining whether good cause exists, the court considers: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S&W Enter., LLC*, 315 F.3d at 536.

As to the first consideration, HCS has provided no explanation for failure to timely move for leave to amend other than its belief that no such motion was required. The court has already rejected this argument in its analysis of PIIC's motion to strike directly above.

Regarding the importance of the amendment, HSC states "the sole intent of [the proposed amended pleading] was to restate and elaborate upon its bad faith claim in accordance with Texas law, and to request its own declaratory judgment from the Court in connection with the coverage dispute." Def. Resp. to Pl. Mot. to Strike at 2. First, the court has already had to determine the rights and duties of the parties under the Policy in resolving PIIC's motion for summary judgment requesting declaratory relief. PIIC itself agreed that it "has asked the Court to resolve the identical issues as those raised in HCS' one-paragraph declaratory judgment counterclaim." Pl. Mot. to Strike at 8. Accordingly, adding a request for declaratory judgment is not necessary. *See supra* at 17, n.6. Moreover, under Rule 8(a)'s notice pleading standard, it is difficult to understand how restating and elaborating on the bad faith claim is important. To the extent HCS wanted "to restate an already existing bad faith claim in terms of applicable Texas law," Def. Resp. to Pl. Mot. to Strike at 4, the court has already concluded based on the parties agreement that Texas substantive law governs in this case. *See supra* at 5.[7]

_____

[7]The importance of the amendment is even more questionable in light of HCS's statement in the parties' Joint Report, filed October 7, 2008 (Docket No. 56), that in this lawsuit, "both parties are seeking exclusively declaratory relief – monetary relief is not being sought by either party." *See* Joint Report at 1. As part of the bad faith claim already asserted in the live pleading, HCS clearly seeks monetary relief. *See* Amended Ans. & Counterclaim at 6. The proposed amendment also seeks monetary relief.

As to potential prejudice in allowing the amendment, HCS contends "such amendment is wholly without prejudice" to PIIC.   Def. Resp. to Pl. Mot. to Strike at 4. PIIC contends that it would be prejudicial and burdensome to allow amendment since it already filed its motion for summary judgment, which has been fully briefed, and because PIIC would have to respond to a new claim for unfair claim settlement practices. As PIIC already filed its motion for summary judgment, allowing amendment to add a claim of unfair settlement practices to the already existing bad faith claim would be prejudicial to PIIC.

As to the availability of a continuance to cure such prejudice, though arguably the court could extend the deadlines set forth in the Scheduling Order and allow PIIC an extension of time to assess HCS's claim for unfair settlement practices and potentially allow the parties to substitute new summary judgment motions for those already ruled upon by the court, such an extension would necessitate an extension of all other deadlines, including the trial date (currently set for the court's four-week docket beginning February 2, 2009), further delaying the disposition of this case which was initially filed in the District of Arizona on November 3, 2006, and has been pending before this court since August 28, 2007.   This the court will not do.   District judges have the power to control their dockets by refusing to give non-diligent litigants another chance to develop their case.  *See Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997); *see also Guillory v. Dotmar Industries Inc.*, 95 F.3d 1320, 1332 (5th Cir. 1996) ("It is well established that the district court is entitled t[o] manage its courtroom and docket."); *Freeman v. Continental Gin Co.*, 381 F.2d 459,

469 (5th Cir. 1967) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").  Not only would granting leave have an adverse impact on the timely resolution of this case, it would also affect other settings on the court's docket.

The court instead admonishes HCS's counsel to review the Federal Rules of Civil Procedure and to follow the court's April 1, 2008 Scheduling Order in the future, to avoid further problems.  Under the circumstances presented, the court concludes that HCS has failed to demonstrate good cause to modify the scheduling order. See *S&W Enter., LLC*, 315 F.3d at 536; Fed. R. Civ. P. 16(b).  Accordingly, the court **denies** HCS's motion for leave to amend.[8]

## IV.     Conclusion

Based on the foregoing, the court **denies** Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment  (Docket # 37) and **denies as moot** Defendant's Motion for Partial Summary Judgment  (Docket # 42). Coverage is triggered under Professional Liability Insurance Policy No. Policy No. PHSD041249 as to Phoenix Indemnity Insurance Company's claims against Defendant Hallmark Claims Service, Inc. in *Phoenix Indemnity Insurance Company v. Herzon and O'Connor, et al.*, Case No. CV 2004-008961, pending in Maricopa County Superior Court in Arizona.  Further, Exclusion O of the Policy does not apply, and Plaintiff Philadelphia Indemnity Insurance

---

[8]Although HCS's failure to demonstrate good cause to modify the Scheduling Order under Rule 16(b) obviates the need for the court to consider HCS's motion for leave to amend under Rule 15 (*see S&W Enter., LLC*, 315 F.3d at 536), the court nevertheless determines that even under this more liberal standard, leave to amend should be denied. *See generally In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)) (when deciding whether to grant leave to amend a pleading, court may consider such factors as undue delay, bad faith or dilatory motive on behalf of movant, undue prejudice to the opposing party, and futility of amendment).

Company is therefore obligated to defend Defendant Hallmark Claims Services, Inc. in *Phoenix Indemnity Insurance Company v. Herzon and O'Connor, et al.*. With regard to Plaintiff Philadelphia Indemnity Insurance Company's request for declaratory relief that it has no duty to indemnify Hallmark Claim Services, the court **dismisses this claim without prejudice**.[9] Further, the court **grants** Plaintiff Philadelphia Indemnity Insurance Company's Motion to Strike Defendant's Second Amended Answer and Counterclaim (Docket # 46) and **denies** Defendant's Motion for Leave to Amend (Docket #51). The court hereby **strikes** Defendant's Second Amended Answer and Counterclaim and **directs** the clerk of court to strike Docket Entry Number 45. A final judgment consistent with the court's ruling will issue separately.[10]

       **SO ORDERED** on this the 10th day of December, 2008.


_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**

---

[9] As the Arizona Action has not concluded, the duty to indemnify is nonjusticiable. *See Northfield Insur. Co.*, 363 F.3d at 537 (in suit district court found insurer had a duty to defend insured, affirming district court's dismissal without prejudice of duty to indemnify issue since, other than in circumstances that do not apply here, "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded[.]").

[10] On October 7, 2008, the parties filed their "Joint Report" (Docket # 56), informing the court that "the exclusive relief sought by each party is a declaration from the Court that resolves the parties' insurance coverage dispute." *See* Joint Report at 1-2. Given that the court has today issued a declaration of the parties' rights and responsibilities under the Policy, the court concludes that, based on the parties' stipulation in the Joint Report, entry of final judgment is appropriate.